## Ennis v. Commonwealth.

October 8, 1948.

Cecil C. Wilson for appellant.

A. E. Funk, Attorney General, and John C. Talbott, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The grand jury of Barren County returned an indictment against V. K. Ennis charging him with the unlawful possession of intoxicating liquor in local option territory. The indictment also charged that Ennis had been convicted of violations of the Local Option Law, KRS 242.010 et seq., on three previous occasions. The jury found the defendant guilty, and fixed his punishment at confinement in the penitentiary for a term of two years under KRS 242.990, which provides that any person who violates any of the provisions of the Local Option Law shall, for the third and each subsequent offense, be confined in the penitentiary for not less than one nor more than two years.

Appellant first argues that the evidence fails to show he had in his possession intoxicating liquor for sale, and that, therefore, he was entitled to a directed verdict of acquittal. Three police officers went to appellant's home on the afternoon of February 28, 1947, with a search warrant. In the house besides appellant were three men and two women. One of the officers went to the front door with the search warrant, one to a side door, and one to the back door. As they entered the house they heard someone say, "Let her go," and immediately thereafter heard "a slush like someone throwing water out." Jesse Edmonds, one of the officers, testified in part:

"I had a search warrant for V. K. Ennis' place, Paul Hagan and myself and C. J. Ryan went to V. K.'s house and drove up in front and got out, Paul Hagan went to the front door with the search warrant, I went to the side door and C. J. Ryan went to the back door and Paul knocked on the door a time or two and they opened the door and let him in, there was quite a commotion in there, I heard one of them say let her go and about that time they emptied this bucket of whisky.

"Q. Did you see that? A. Yes, sir.

"Q. Go ahead and tell the jury what happened after that? A. Well they throwed that in the floor and they had a lard can of water there.

"Q. Where was this lard can of water? A. Setting on the floor and they throwed all this on the floor and I grabbed a bucket and dipper there and went to dipping it up on the linoleum rug in the front room I went to dipping it up and putting it in the bucket as evidence and that over there is what I dipped up.

"Q. What was it that you dipped up? A. Soap sud water and whisky.

"Q. I hand you here two bottles and ask you whether or not you ever saw those two bottles before? A. Yes, sir.

"Q. Tell the jury what it is? A. Moonshine liquor, soap suds and water.

"Q. Where did it come from? A. The front room of V. K. Ennis' house.

"Q. Is that what you took up off the floor? A. It is.

"Q. I will ask you if you ever saw that bottle there before? A. Yes, sir.

"Q. What is that? A. The same stuff that is in the other bottle.

"Q. Is that part of the same stuff that you mopped up off the floor? A. Yes, sir; I dipped it up with a dipper.

"Q. What else did you get beside that, Jesse, if anything? A. Got a pint bottle of seven crown whisky about half full."

Appellant denied that any whisky was poured on the floor as the officers entered the house or that he owned the one-half pint of liquor found by them. Lucy Lee Sublett, one of the women present, testified that she had arrived in Cave City earlier in the day from Louisville, and had brought the pint of 7 Crown whisky with her. Several witnesses testified that appellant's reputation for trafficking in liquor was bad. The evidence was sufficient to take the case to the jury on the question of appellant's guilt.

The accusatory part of the indictment contained no reference to previous convictions. In the descriptive part three previous convictions of the Local Option Law were alleged. It is argued that failure to set out these convictions in the accusatory part of the indictment renders it fatally defective, but this argument was answered adversely to appellant's contention in Beshears v. Commonwealth, 239 Ky. 554, 39 S. W. 2d 995.

The Commonwealth attempted to show three previous convictions of appellant for violations of the Local Option Law, and did establish two, one in the Barren Quarterly Court on March 10, 1943, and one in the Cave City Police Court on May 24, 1946. It also introduced evidence concerning a conviction in the Cave City Police Court on September 29, 1941. The records of the Police Court were introduced, and they showed that V. K. Ennis was charged with selling liquor. The judgment entered on September 29, 1941, recited that the defendant entered a plea of guilty, and was fined $100 and costs. A mandatory jail sentence was part of the penalty for a violation of the Local Option Law at that time. The records of the Police Court are meager and far from clear, but the judgment reveals on its face that the fine imposed was for an offense other than a violation of the Local Option Law. It was shown without contradiction or objection that appellant was arrested in September, 1941, under a warrant charging him with unlawfully selling liquor, and that the charge was changed to one for breach of the peace to which he entered a plea of guilty and paid a fine of $100 and costs amounting to $7.50. Notwithstanding the failure of the Commonwealth to prove that the conviction of September 29, 1941, was for a violation of the Local Option Law, the court included this conviction in the instruction authorizing confinement in the penitentiary for the third offense. It is argued by the Commonwealth that inclusion of this conviction in the instruction was surplusage since two previous convictions were established, but since the jury fixed the penalty at two years' imprisonment, the limit permitted by the statute, we conclude that the instruction was prejudicially erroneous.

The judgment is reversed with directions to grant appellant a new trial.